UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE C. JAMES,

Petitioner,

v.

DANIELLE DILL, *Executive Director*,[1]

Respondent.

No. 18-CV-932 (KMK) (PED)

ORDER ADOPTING REPORT &
RECOMMENDATION

---

Appearances:

Wayne James
New York, NY
*Pro Se Petitioner*

James Gibbons, Esq.
Office of the New York Attorney General
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

Wayne James ("Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas

Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, challenging his civil confinement at

Central New York Psychiatric Center.  (*See generally* Pet. for Writ of Habeas Corpus ("Pet.")

(Dkt. No. 1).)[2]

---

[1]  Danielle Dill, Psy.D., is now the Executive Director of Central New York Psychiatric
Center and is substituted for former Executive Director Deborah McCulloch as the Respondent
in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Petitioner has submitted a letter to the Court indicating that he was released from civil
confinement on June 16, 2022 pursuant to an order from the Oneida County Supreme Court
finding that he was not a dangerous sex offender requiring confinement.  (*See generally* Letter
from Wayne James to Court (July 18, 2022) ("Release Letter") (Dkt. No. 77).)

On February 16, 2018, the Court referred the Petition to Magistrate Judge Paul E. Davison.  (Dkt. No. 5.)  In a Report and Recommendation ("R&R") dated August 3, 2021, Judge Davison recommended that the Petition be denied in its entirety.  (*See* Report & Recommendation ("R&R") 1 (Dkt. No. 56).)  Petitioner filed Objections to the R&R on August 20, 2021.  (*See* Pet'r's Written Obj's to R&R ("Pet'r's Obj's") (Dkt. No. 60).)  Respondent filed a Response ("Response") on September 17, 2021. (*See* Resp't's Response to Pet'r's Obj's ("Response") (Dkt. No. 66).)  After a review of the R&R, Petitioner's Objections, and the Response, the Court adopts the result recommended in the R&R and denies the Petition.

## I.  BACKGROUND

The factual and procedural background of this case are set forth in Judge Davison's thorough R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 2–5.)  The Court here summarizes the facts relevant to addressing Petitioner's Objections to the R&R.

### A.  New York's Sex Offender Management and Treatment Act

New York's Sex Offender Management and Treatment Act ("SOMTA"), codified at N.Y. Mental Hygiene Law ("MHL") § 10.01, *et seq.*, "creates a statutory scheme prescribing the procedures to be followed with respect to convicted sex offenders who the state seeks to commit or supervise following completion of their prison terms."  *Atkinson v. Okocha*, No. 20-CV-4497, 2021 WL 1550493, at *4 (E.D.N.Y. Apr. 19, 2021).

Under the statute, a "detained sex offender," is "a person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, [including] [a] person who stands convicted . . . and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense."  MHL § 10.03(g)(1).  When a detained sex offender

approaches their anticipated date of release or termination of supervision, the statute requires that a case review team evaluate whether they require civil management. *Id.* §§ 10.03(g), 10.05. If the review team finds that a detained sex offender is a sex offender requiring civil management, it must provide written notice of that finding to the offender and the Office of the Attorney General (the "Attorney General"). *Id.* § 10.05(g). The Attorney General may then file an Article 10 petition in the Supreme Court or County Court where the offender is located. *Id.* § 10.06(a). Within thirty days of filing, the court must conduct a hearing to determine whether there is probable cause to believe that the offender requires civil management. *Id.* § 10.06(g). If probable cause is established, the court must conduct a jury trial, or a bench trial if a jury trial is waived, to determine whether, by clear and convincing evidence, the offender "suffers from a mental abnormality." *Id.* §§ 10.07(a), (d). Upon a verdict in the Attorney General's favor, the court must determine whether the offender is a "dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision ["SIST"]." *Id.* § 10.07(f). Confined offenders are entitled to an annual review of their status, including a mental health evaluation and an evidentiary hearing. *Id.* § 10.09.

    B.  Factual Background

    In November 1989, following a jury trial in Westchester County, Petitioner was convicted of Sexual Abuse in the First Degree and Sodomy in the First Degree, and sentenced to twelve and one-half to twenty-five years in prison. (*See* Dkt. No. 52-2 ("State Record Pt. 1") at 44.)[3] On November 23, 1992, the Appellate Division, Second Department affirmed the conviction. *See People v. James*, 591 N.Y.S.2d 784 (App. Div. 1992). The Court of Appeals denied leave to appeal on March 12, 1993. *See People v. James*, 613 N.E.2d 981 (Table) (1993).

---

    [3] Unless otherwise noted, page numbers refer to ECF pagination.

Petitioner's conviction and imprisonment qualified him as a detained sex offender under SOMTA.  (*See* State Record Pt. 1 at 44); *see also* MHL § 10.03(g), (p).

On May 6, 2010, Petitioner was released on parole.  (State Record Pt. 1 at 7.)[4]  On June 9, 2011, he was charged with five counts of violating the conditions of his parole, including failure to participate in a mandatory Sex Offender treatment program.  (*Id.*)  On June 21, 2011, Petitioner was charged with additional counts of violating the conditions of his parole based upon allegations that he verbally and physically assaulted his girlfriend.  (*Id.* at 8–10.)  On December 14, 2011, following completion of a final revocation hearing, the presiding judge recommended that Petitioner's parole be revoked and that he be imprisoned until the maximum expiration date of his sentence.  (*Id.* at 11–13.)[5]  On January 10, 2012, Petitioner was returned to custody.  (*Id.* at 82.)

While Petitioner was in custody, he filed a petition for a writ of habeas corpus in Bronx County Supreme Court, alleging, among other claims, that his parole revocation was improper because the Administrative Law Judge ("ALJ") who conducted Petitioner's time-assessment hearing, which set the date Petitioner could be released from custody, was not the ALJ who

---

[4] On April 8, 2010, the New York Department of Corrections and Community Supervision provided notice to the Attorney General and the Office of Mental Health ("OMH") that Petitioner was a detained sex offender approaching his release date.  (*See* State Record Pt. 1 at 113.)  On April 20, 2010, OMH provided notice that Petitioner was not a sex offender requiring civil management.  (*Id.*)

[5] Prior to Petitioner's parole hearing, the maximum expiration date of his sentence was March  9, 2014.  (*See* Dkt. No. 52-3 ("State Record Pt. 2") at 173.)  After Petitioner was found to have violated parole, his maximum expiration date was adjusted to April 25, 2014 (accounting for his 43-day period of delinquency).  (*Id.*)  Petitioner challenges the procedural propriety of his time-assessment hearing and asserts that the adjusted maximum expiration date was improper. (*See* Pet. at 8.)  For purposes of evaluating the instant petition, the Court adopts Petitioner's assertion that the correct maximum expiration date of his sentence was March 9, 2014.  (*Id.*)

presided over the parole revocation hearing.  (*See* State Record Pt. 1 at 18.)  The Bronx County

Supreme Court held that Petitioner's time-assessment hearing had not comported with the

procedural requirements of the New York Constitution and ordered that a new time-assessment

hearing be held before the same ALJ who had conducted the revocation hearing.  (*Id.* at 20.)  The

new time-assessment hearing was not held before Petitioner's sentence for his 1989 conviction

expired and he was released from custody.  (*Id.* at 23.)

On May 3, 2013, the New York Attorney General filed a petition pursuant to SOMTA in

Westchester County Supreme Court seeking civil management of Petitioner.  (State Record Pt. 1

at 78–89.)[6]  At the conclusion of a probable cause hearing held during June 2013, the court

found probable cause to believe that Petitioner qualified for civil management under SOMTA.

(*Id.* at 115, 124–25, 139–40.)  During a hearing held on October 11, 2013, Petitioner waived his

right to a jury trial on the question of whether he had a mental abnormality, waived a

dispositional hearing, and consented to a determination that he was a sex offender requiring

SIST.  (*Id.* at 140–41, 159; *see also* State Court Transcripts at 3–17 (Dkt. No. 53-5).)

Petitioner's attorney confirmed that Petitioner had previously reviewed the proposed SIST

conditions and requested modification of one condition; the court declined to modify the

condition.  (State Record Pt. 1 at 141; State Court Transcripts at 19–23.)  The court again asked

Petitioner if he wished to consent to SIST; Petitioner answered in the affirmative.  (State Record

Pt. 1 at 92–104, 142; State Court Transcripts at 26.)  At the conclusion of the hearing, the court

issued a written order placing Petitioner on SIST ("the SIST Order").  (State Record Pt. 1 at 90–

91, 124–26.)

---

[6] The Attorney General decided to file its petition after receiving notice on April 30, 2013 that a case management team had found Petitioner was a sex offender requiring civil management.  (*See* State Record Pt. 1 at 88.)

Petitioner appealed the SIST Order to the Appellate Division on the ground that SOMTA did not authorize waiver of a dispositional hearing.  (State Record Pt. 1 at 107–21.)  By Decision and Order dated March 31, 2015, the Second Department affirmed the SIST Order.  *See Matter of State of N. Y. v. Wayne J.*, 7 N.Y.S.3d 529 (App. Div. 2015).  The Court of Appeals denied leave to appeal on July 1, 2015.  *See Matter of State of N.Y. v. Wayne J.*, 37 N.E.3d 1161 (Table) (N.Y. 2015).

In August 2014, Petitioner was arrested for violating the SIST Order and additional conditions imposed by his parole officer.  (State Record Pt. 2 at 92.)  On or about August 25, 2014, the State of New York moved to have Petitioner civilly committed.  (*Id.* at 94.)  On February 27, 2015, at the conclusion of an evidentiary hearing, the Westchester County Supreme Court found that Petitioner "ha[d] violated his SIST conditions, that he [was] not an appropriate candidate for SIST and that he [was] a 'dangerous sex offender' requiring confinement pursuant to MHL § 10.11(d)(4)."  (*Id.* at 80.)  Accordingly, the court ordered Petitioner committed to a secure treatment facility.  (*Id.* at 67–81.)

Petitioner appealed, arguing in part that the SOMTA proceedings were improper because his parole revocation was improper.  (State Record Pt. 2 at 132–133.)  On October 12, 2016, the Second Department affirmed.  *See Matter of State of N.Y. v. Wayne J.*, 39 N.Y.S.3d 206 (App. Div. 2016).  On October 17, 2017, the Court of Appeals dismissed Petitioner's leave application as untimely.  *See Matter of State of N.Y. v. Wayne J.*, 86 N.E.3d 555 (Mem) (N.Y. 2017).[7]

The Petition was received by the Clerk's Office and filed on January 29, 2018.  (*See generally* Pet.)  Respondent filed a Memorandum of Law opposing the Petition on July 20, 2021.

---

[7] Petitioner has also initiated a number of other proceedings that are not relevant to the Court's decision here, but are reviewed by Judge Davison in his thorough R&R.  (*See* R&R 5–6.)

(*See* Resp't's Mem. of Law in Opp'n to Pet.  ("Resp't's Opp'n") (Dkt. No. 51-1).)  Judge

Davison issued the R&R on August 3, 2021, recommending that this Court deny Petitioner's

request for relief and dismiss the Petition in its entirety.  (*See generally* R&R.)  Petitioner

subsequently filed his timely Objections.  (*See* Pet'r's Obj's.)[8]  Respondent filed a Response on

September 17, 2021.  (*See* Response.)

## II.  DISCUSSION

### A.  Applicable Law

#### 1.  Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by a

magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of

Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

recommendation.  The objections must be "specific" and "written," FED. R. CIV. P. 72(b)(2), and

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition,"

*id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* FED. R. CIV. P. 6(d), for a total of

seventeen days, *see* FED. R. CIV. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner

has done here, the Court reviews de novo the parts of the report and recommendation to which

the party objected.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).  The district court "may

---

[8] Since the filing of his Objections, Petitioner has also addressed numerous letters to the Court, some of which include additional documents or arguments that Petitioner seeks to have the Court review (*see*, *e.g.*, Dkt. Nos. 69–70, 72, 74–75) and which raise additional claims not cognizable in this proceeding, (*see*, *e.g.*, Dkt. Nos. 71, 72, 78).  The Court does not address the requests in these letters.

adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting FED. R. CIV. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

## 2. Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas

applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08 (alterations and quotation marks omitted). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citations and quotation marks omitted); *see also id.* (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction

through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted).

Consequently, a federal court must deny a habeas petition in some circumstances even if the

court would have reached a conclusion different than the one reached by the state court, because

"even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of

Appeals might have reached a different conclusion as an initial matter, it was not an

unreasonable application of our precedent for the [state court] to conclude that [the petitioner]

did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012)

("Although we might not have decided the issue in the way that the [New York State] Appellate

Division did—and indeed we are *troubled by the outcome we are constrained to reach*—

we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation

omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be

correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When

reviewing a habeas petition, the factual findings of the New York Courts are presumed to be

correct." (alteration and quotation marks omitted)).  The petitioner must rebut this presumption

by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d

217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings.  "[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions.  In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*,

502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof,

a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

B.  Application

Petitioner raised a single claim that his 2011 time-assessment hearing was unlawful and, therefore, his civil confinement pursuant to SOMTA violated due process because he was a parolee and not a detained sex offender at the time the Attorney General initiated civil management proceedings against him.  Judge Davison rejected this claim.  (*See* R&R 13–15.)

In his Objections, Petitioner reasserts his claim that he was denied due process because he was a parolee, and not a detained sex offender, when the Attorney General initiated civil management proceedings.  (*See* Pet'r's Obj's at 7.)

1.  Mootness

Petitioner notified the Court on July 16, 2022 that he had been released from civil confinement on the basis of an order from the New York Supreme Court, Oneida County.  (*See* Release Letter at 1.)  Because Petitioner's requested relief in this proceeding was release from civil confinement, his release requires the Court to assess whether Petitioner's claim is now moot.

In order to satisfy the Constitution's "case-or-controversy" requirement, "a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999).  Mootness "must be considered at every stage of [a] habeas proceeding," *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016), and if at any point a habeas petition "that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it . . . must be

11

dismissed for mootness." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020). A habeas petition does not automatically become moot "when the order it challenges is no longer in effect, so long as the petitioner suffers some concrete and continuing injury or collateral consequence resulting from the challenged order," *id.* (quotation marks and citation omitted), and so long as that injury is "likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation and quotation marks omitted).

Here, Petitioner challenged his civil confinement, which ended as of June 16, 2022. (*See* Release Letter at 1.) According to the decision that Petitioner attached to his Letter to the Court, the Oneida County Supreme Court determined that Petitioner "does not suffer from a mental abnormality and is not a dangerous sex offender requiring confinement" and "shall be released from the care, custody, control and supervision of the New York State Office of Mental Health pursuant to Article 10 of the Mental Hygiene Law forthwith." (*Id.* at 9.) Thus, Petitioner is no longer subject to the requirements of SOMTA. *See generally* MHL § 10.03.[9] Because Petitioner challenged his confinement and not his underlying conviction, Petitioner's claim is now moot. *See Bomasuto v. Perlman*, 680 F. Supp. 2d 449, 457 (W.D.N.Y. 2010) (dismissing habeas petition because petitioner had been released and only relief sought was specific performance of prison sentence promised by trial court); *Escobar-Hernandez v. Barr*, No. 20-CV-9714, 2021

---

[9] The Court also notes that Petitioner's sentence ended as of March 9, 2014. (*See* State Record Pt. 2 at 173.) Thus, Petitioner's release from civil confinement will not result in the imposition of any collateral consequences, such as a period of supervised release, which have been held sufficient to prevent a petitioner's release from mooting the case. *See Janakievski*, 955 F.3d at 319 (2d Cir. 2020) ("[A] habeas petition 'does not necessarily become moot' when the order it challenges is no longer in effect, so long as the petitioner suffers 'some concrete and continuing injury' or 'collateral consequence' resulting from the challenged order.") (quoting *Mercurris*, 192 F.3d at 293).

The Court has also independently reviewed Petitioner's record on the publicly available New York Sex Offender Registry and confirmed that he is not subject to any sentence. *See* https://www.criminaljustice.ny.gov/nsor/ (last visited Jan. 9, 2023).

WL 1863972, at *2 (S.D.N.Y. May 10, 2021) (finding federal habeas petitioner's claim was

moot because challenged detention had ended upon petitioner's removal from the United States);

*cf. United States v. Blackburn*, 461 F.3d 259, 260 (2d Cir. 2006) (holding that federal habeas

petition challenging trial court's application of sentencing enhancement was moot because

petitioner had completed sentence).

### 2.  Due Process Claim

While Petitioner's release may have mooted his claim, the Court will also review his

objection to Judge Davison's rejection of his due process claim.  The Court finds Petitioner's

claim is without merit.[10]

Petitioner's objection simply reasserts his claim that he was denied due process because,

at the time that the Attorney General brought the civil management proceeding, Petitioner was a

parolee and not a detained sex offender.  (*See* Pet'r's Obj's at 7.)  However, SOMTA defines a

"detained sex offender" in relevant part as "[a] person who stands convicted . . . and *is currently*

*serving a sentence for, or subject to supervision by the division of parole, whether on parole or*

*on post-release supervision, for such offense or for a related offense*."  MHL § 10.03(g)

(emphasis added).  Thus, as Judge Davison also found, the Attorney General could have initiated

the civil management proceeding on May 3, 2013 whether or not Petitioner was in custody.  (*See*

R&R at 15.)  Because Petitioner's parole revocation and civil management proceedings were

independent of one another, the procedural issue that arose during parole revocation is irrelevant

---

[10]  Judge Davison correctly points out in his R&R that it is likely that Petitioner has not
properly exhausted his claim.  (*See* R&R at 14.)  However, the Court agrees that the record is
incomplete on this point, so it is appropriate to address and deny Petitioner's claim on the merits,
as the law allows.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may
be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies
available in the courts of the State.").

to the outcome of the civil management proceeding.[11]  Further, SOMTA's definition of

"detained sex offender" includes a person "who has been determined to be a sex offender

requiring civil management pursuant to this article."  MHL § 10.03(g)(6).  When the Attorney

General moved to have Petitioner civilly confined on August 25, 2014, Petitioner was also a

detained sex offender within the meaning of the statute.  Therefore, the Court agrees with Judge

Davison that Petitioner's claim is without merit.

### III.  Conclusion

The Court, having conducted a thorough and de novo review of the remainder of the

R&R, finds no error.  The Court therefore adopts the outcome of Judge Davison's R&R.

Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

---

[11] Although this argument was not raised in his Petition, Petitioner now claims that SOMTA "does not provide for renewal of an evaluation of an individual, once such individual has been investigated and found not to be a sex offender in need of civil confinement," as Petitioner was in 2010.  (*See* Pet'r's Obj's at 7; State Record Pt. 1 at 113.)  Petitioner argues his case could not have been resubmitted to the case review team in 2013 without some "new finding" that he had "committed a crime[] or engaged in some act or violation under the statute." (Pet'r's Obj's at 7.)  The Court has reviewed the statute and finds that this claim is meritless because SOMTA allows for any agency with jurisdiction to provide notice of a detained sex offender's release from custody *or* supervised release to the Attorney General and OMH at least four months before such release so that the offender's case may be reviewed.  *See* MHL § 10.05(b).  Thus, whether or not Petitioner was in custody, the appropriate agency would have provided notice of the pending termination of his sentence, triggering a review of Petitioner's case.  *Id.* § 10.05(d), (e).

Petitioner also asserts that during its 2013 review, OMH should have been "limited to . . . the same documents and information available . . . when they conducted the first evaluation of [P]etitioner in April 2010" as any "information elicited from [the] [2011] parole . . . [revocation]" was inadmissible because Petitioner was denied due process.  (Pet'r's Obj's at 8.) Again, Petitioner did not raise this issue in his Petition, but the Court on review finds the claim is meritless.  Petitioner's claim is logically inconsistent, as the procedural issue that the Bronx County Supreme Court found with his parole revocation—that the ALJ who conducted the parole revocation hearing did not also preside at the time-assessment hearing—did not in any way call into question the evidence of Petitioner's violation of the conditions of his parole.  (*See* State Record Pt. 1 at 18–22.)  Thus, there is no reason that the evidence adduced to support Petitioner's parole revocation should not have been considered by OMH.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Patrol*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the court certifies in writing that it was not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, and close the case. SO ORDERED.

DATED:      February 13, 2023
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15